UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSANA PAVAO,

    Plaintiff,

v.                                  Case No.:  8:23-cv-1201-NHA

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff asks the Court to reverse a November 29, 2022 decision finding that she was no longer disabled and denying her claims for a period of disability and disability insurance benefits. On appeal, Plaintiff argues that the Administrative Law Judge ("ALJ") found—without substantial evidence—that Plaintiff's overactive bladder was a non-severe impairment that did not limit Plaintiff's residual functional capacity ("RFC"). Doc. 21. Having reviewed the parties' briefing and the record below, I find the ALJ's decision was based on substantial evidence and employed proper legal standards. I affirm.

### I.    Procedural History

Plaintiff initially applied for disability benefits on November 15, 2013. R. 99. She claimed she became disabled on August 1, 2013, when she could no longer work as a certified nursing assistant, due to certain mental health

conditions. R. 45, 99. On January 27, 2014, the Social Security Administration's ("SSA") determined that Plaintiff became disabled on August 15, 2013, due to an affective disorder, which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 10, 12. The SSA reviewed Plaintiff's disabled status the following year and determined, on November 2, 2015, that Plaintiff's disability continued. R. 10.

In early 2020, the SSA initiated another review of Plaintiff's condition. *See* 20 C.F.R. § 404.1590(d) (explaining periodic review of disability). In March 2020, at the request of the SSA, Plaintiff completed a Continuing Disability Review Report, on which she reported that she was limited in her ability to work because she had difficulty focusing on tasks, felt anxious on long commutes, experienced episodes of depression, and sometimes had difficulty falling and staying asleep. R. 277. Plaintiff documented on her Continuing Disability Review Report that she had been recently treated for her mental health conditions, stomach aches, blood pressure issues, and ear pain. R. 278–81. She did not report any bladder problems. R. 277–81.

On February 3, 2021, the SSA determined, based on updated records submitted by Plaintiff, that Plaintiff had medically improved and was no longer disabled. R. 56-77; *see also* R. 107 ("You state that you continue to be disabled due to depression and stomach problems. The medical evidence indicates your mental health condition has improved and that you are able to

2

communicate, act in your own interest, take care of your personal needs and follow instructions.").

Plaintiff then requested review (meaning a reconsideration of the cessation of benefits), and alleged to the SSA for the first time that she suffered from bladder problems, in addition to heart problems, anxiety, and depression. R. 114–18. Specifically, Plaintiff explained that she had been suffering from bladder problems since 2019, that she needed to use the restroom every one-to-two hours, and that her doctors had been unable to diagnose or treat this symptom. R. 117, R. 345 ("I'm always peeing"); R. 346 (mentioning visit to kidney specialist); R. 371 (reporting to SSA representative that she used the bathroom every one-to-two hours all day and night). The matter was set for an informal hearing. R. 90. During the informal hearing, Plaintiff testified that she had an overactive bladder that required her to go to the bathroom every hour or two. R. 94, R. 148, R. 153. However, the Social Security Administration found that her ability to work was not impacted by her overactive bladder, or any other physical condition, found that her mental condition had improved, and confirmed her cessation of benefits. R. 94, 97, 157.

Plaintiff then requested a hearing before an ALJ. R. 166. The ALJ conducted a hearing on October 14, 2022, at which Plaintiff's representative spoke, and both Plaintiff and a vocational expert gave sworn testimony. R. 41–55. Plaintiff's representative submitted that, since the ALJ's last decision,

3

Plaintiff had developed a urinary frequency condition. R. 44. Plaintiff testified that she had suffered from the condition for approximately two years and that it required her to use the restroom every one-to-two hours at night. R. 46. She further testified that neither medication nor lifestyle changes (like consuming less fluid or sugar) alleviated the condition. R. 47. Plaintiff stated that she could not work because she constantly had to be in the bathroom during the day. R. 49.

On November 29, 2022, the ALJ issued an opinion[1] finding Plaintiff's disability ended on February 3, 2021. R. 10–22. He found that Plaintiff still suffered from the severe impairment of major depressive disorder (R. 15) but that "medication management has provided significant symptom control." (R. 14). He found Plaintiff's impairment no longer met or medically equaled the

---

[1] The ALJ's opinion followed the eight-step evaluation process to determine whether a claimant continues to be disabled. 20 C.F.R. 404.1594(f)(1)–(8). The eight-step sequential evaluation requires the ALJ to consider the following inquiries: (1) Is the individual performing substantial gainful activity; (2) Does she have a severe impairment or combination of impairments that meets or equals the severity of an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) If she does not, has there been medical improvement; (4) If there has been medical improvement, is it related to her ability to do work; (5) Does an exception to medical improvement apply; (6) Do all current impairments in combination significantly limit the claimant's ability to do basic work activities; (7) After assessing the RFC, can she perform her past relevant work; and (8) Based on her RFC, age, education, and work experience, does other work exist in the national economy that can she perform.

4

severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15.

In his opinion, the ALJ also considered Plaintiff's other conditions, including overactive bladder.[2] R. 15. He found that her overactive bladder was controlled with medication and treatment, or caused only transient and minor symptoms; accordingly, he did not find that Plaintiff's overactive bladder was a severe impairment. *Id.* Ultimately, the ALJ found that Plaintiff's affective disorder (major depressive disorder) was her only severe impairment. *Id.*

Nonetheless, in determining Plaintiff's residual functional capacity ("RFC"), the ALJ accounted for "[a]ny minimal limitations attributable to [Plaintiff's] non-severe impairments" (one of which was her overactive bladder (R. 15)) including by reducing Plaintiff's RFC to a "medium" exertional level. R. 16. Ultimately, the ALJ found Plaintiff to have the RFC to perform medium work,[3] with some modifications: she was limited to simple, routine, repetitive tasks with no detailed instructions; only occasional interaction with the public and co-workers; and no changes to the work environment. The ALJ did not

---

[2] In addition, the ALJ considered Plaintiff's gastritis, type II diabetes, hyperlipidemia, atherosclerosis of aorta, dysphagia, unspecified kidney disease stage 2 (mild), and essential hypertension. R. 15. He found none of these to be severe. *Id.*

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5

determine that her RFC required that she have additional breaks for visits to the restroom. *Id.* Given this RFC, and the testimony of a vocational expert, the ALJ found that Plaintiff could perform jobs that existed in substantial numbers in the national economy, including those of kitchen helper, food service worker, and packer.[4] R. 21. Accordingly, the ALJ determined that Plaintiff's disability ended on February 3, 2021, and Plaintiff had not become disabled again since that date.

Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied it. R. 1–6. After requesting and receiving an extension of time to do so (R. 30), Plaintiff then filed a Complaint with this Court. Doc. 1. She filed a brief opposing the Commissioner's decision (Doc. 21), and the Commissioner responded (Doc. 23). Plaintiff did not file a reply. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. The Record

Plaintiff, who was born in 1970, has a high school education, and has previously worked as a certified nursing assistant. R. 45, 50, 99. She initially became disabled on August 15, 2013, due to an affective disorder. R. 10, 12. She alleged that she continued to be disabled in March 2020, because she had

---

[4] The ALJ found that Plaintiff had no past relevant work. R. 20. Although she previously worked as a CNA (R. 399), the ALJ determined that work did not qualify as "past relevant work" as defined by the SSA. R. 52; *see also* 20 C.F.R. 404.1560(a)(1).

6

a difficult time focusing on tasks, felt too anxious to make long commutes, experienced episodes of depression, and had difficulty falling and staying asleep. R. 277. After she was notified that her disability benefits were being terminated, Plaintiff contested that decision, claiming to the SSA for the first time that she suffered from a debilitatingly overactive bladder. R. 117.

The only facts relevant to the appeal are those relating to Plaintiff's overactive bladder and the limitations caused by that condition.[5]

The medical records show that Plaintiff was diagnosed with diabetes in or around September 2019. R. 551, 689. Shortly thereafter, Plaintiff complained to her provider about an overactive bladder. R. 681. Plaintiff was initially prescribed Oxybutynin to relieve her overactive bladder, but it was not effective. R. 681; *see also* R. 608 (Plaintiff reporting to her mental health provider in April 2020 that she was given Oxybutin to treat her frequent urination, but it had not helped). Plaintiff was then prescribed Tolterodine (also known as Detrol), which she reported did not significantly alleviate the problem. R. 763; *see also* R. 606 (In October 2020, Plaintiff again complained to her mental health provider about her bladder issues, explaining that she

---

[5] Although Plaintiff's mental condition (affective disorder) led to the initial finding that she was disabled, on appeal, Plaintiff does not contest the ALJ's finding that her mental impairments had improved such that she was no longer disabled because of her affective disorder. *See* Pl. Br., Doc. 21.

7

woke up every two hours to urinate and "was given a new medication but it has only helped a little.").

Plaintiff's primary care doctor then referred her to urologist V.P. Nagarajan, M.D. R. 669. Plaintiff established care with Dr. Nagarajan on November 3, 2020. R. 763. He noted that Plaintiff complained of urinating six to seven times during her sleeping hours, and that the Detrol did not help her. R. 763. He asked her to complete a "bladder diary" (recording her fluid intake and voids). *Id.* On November 16, 2020, after reviewing the bladder diary, Dr. Nagarajan diagnosed Plaintiff with polyuria nocturia, meaning her body made too much urine during the night. R. 634 ("She makes less [urine] during the waking hours[,] more during the sleeping hours"). The next month, after again reviewing a diary of Plaintiff's fluid intake and voids, Dr. Nagarajan confirmed she had polyuria nocturia. *Id.* (also noting, "During the day she goes very little each time."). Given that Plaintiff's medication (Detrol) was ineffective, he offered her other medication options; however, she declined them. *Id.*

Plaintiff continued to complain about her bladder issues in early 2021. *See e.g.,* R. 788 (March 5, 2021), 1029 (March 31, 2021). In February 2021, Plaintiff saw gynecologist Mona McCullough with complaints of frequent urination, which Plaintiff rated as a 10 of 10 in severity. R. 768. Plaintiff said she had to urinate at least every two hours during daytime and nighttime. R. 768. Dr. McCullough prescribed pelvic physical therapy. R. 771.

8

The record on appeal does not show that Plaintiff ever attended pelvic physical therapy. However, the record does show that Plaintiff stopped taking the Detrol and ceased complaining to her primary care provider about, and seeking treatment for, an overactive bladder after March 2021. *See* R. 985–87, R. 994–96, R. 1000–02. On April 28, 2021, Plaintiff reported to her nephrologist (kidney specialist) of no increased frequency urinating. R. 959. Notes from a May 2021 appointment with a primary care doctor mention issues with blood in her urine, but nothing about urination frequency. R. 935. And, when visiting her primary care doctor in September 2021, February 2022, and June 2022, she denied frequent urination. R. 985–87, R. 996, R. 1002. Of note, during this period, Plaintiff did complain about the overactive bladder to her mental health provider (who could not have treated her for the condition), but she limited her complaints to an issue with nighttime urination.[6] *See* R. 977 (reporting in May 2021 that she woke up every few hours to use the bathroom); R. 975 (reporting waking up every one to two hours at night to urinate in September 2021); R. 1043 (reporting in January 2022 she woke up to use the bathroom at night but is able to fall back asleep); 1041 (reporting in April 2022

---

[6] Plaintiff appears to have sometimes provided an inaccurate report of her physical health to her mental health providers. For example, she reported to her mental health provider that she was allergic to an overactive bladder medication (R. 975), but the medical records do not reflect such an allergy (R. 941 (listing other allergies), R. 634 (reporting the medication caused dry mouth rather than an allergic reaction)).

9

she woke up every two hours during the night to use the restroom but was able to fall back asleep); R. 1039 (reporting in July 2022 that she woke up every few hours during the night to use the bathroom but was able to fall back asleep).

Plaintiff's bladder was consistently unremarkable in imaging studies. October 2020 and March 2021 CT scans of Plaintiff's bladder were both unremarkable. R. 669, 752, 1031. Dr. Nagarajan found that Plaintiff's bladder did not retain liquid after she urinated. R. 635. A cystoscopy of Plaintiff's bladder (in which Dr. Nagarajan examined Plaintiff's bladder through an internal scope) revealed little abnormality. R. 636 (no evidence of urethral stricture, normal bladder neck, normal ureteric orifices, no tumors or stones, mild trabeculation (thickened muscular walls)); *see also* R. 653 (describing the results of the cystoscopy as "unremarkable"). Another cystoscopy in March 2021, also had normal findings. R. 770.

Nonetheless, Plaintiff reports to the SSA that she uses the restroom every one to two hours at night and that she cannot work because she must always be in the bathroom during the day. R. 46, 49.

### III. Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the

10

Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that

the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## IV. Analysis

Plaintiff contends that the ALJ's "findings regarding Plaintiff's overactive bladder condition [are] not supported by [] substantial evidence." Pl. Br. (Doc. 21) at 3. The ALJ's findings concerning Plaintiff's overactive bladder condition, which Plaintiff now challenges, were that (1) it was not a severe impairment because it was controlled with medication and treatment, or caused only transient and minor symptoms (R. 15), and (2) it did not necessitate any limitations (such as the need for additional breaks) in Plaintiff's RFC (R. 16).

In the first place, whether the ALJ characterized Plaintiff's overactive bladder as a severe or non-severe impairment is irrelevant. The ALJ found that Plaintiff had at least one severe impairment (her depressive disorder), and that finding was sufficient to require the ALJ to analyze the limitations associated with each of Plaintiff's impairments, regardless of their severity. During the disability determination, the ALJ must determine whether a claimant's medically determinable impairments are "severe." 20 C.F.R. §§

404.1520(a)(4)(ii), (c). A severe impairment is one that significantly limits one's ability to perform "basic work activities" for at least 12 consecutive months. See 20 C.F.R. §§ 404.1509; 404.1522. Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). The claimant bears the burden of demonstrating that an impairment significantly affects her ability to perform basic work activities. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984). If the ALJ determines that the claimant has *no* severe impairments (nor a combination of impairments that is severe), his analysis ends; the claimant is found to be not disabled. 20 C.F.R. § 404.1520(c). If the claimant has at least one severe impairment (or a combination of impairments that is severe), the analysis of whether the claimant is disabled continues. *Id.* Thus, the Eleventh Circuit has described this step as a "filter" to cull out claims where the claimant has *no* substantial impairments and, therefore, is therefore not disabled under the Social Security Act. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[I]f no severe impairment is shown the claim is denied, but the finding of severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to [proceed with the rest of the analysis]."). Consequently, the Eleventh Circuit has repeatedly held that there is no need for an ALJ to identify *every* severe impairment at step

13

two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 950 (11th Cir. 2014) ("Based on our precedent and the regulations . . . it is apparent that there is no need for an ALJ to identify every severe impairment at step two."); *Heatly v. Comm'r of Soc. Sec.*, 382 Fed. Appx. 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). To state it differently, to the extent the ALJ finds that a claimant has *any* severe impairment, it is irrelevant that the ALJ found the claimant's other impairments to be non-severe. The pertinent inquiry is not whether the non-severe impairments should have been classified as severe, but instead whether the ALJ considered limitations from those impairments at the later steps of the sequential analysis, in determining Plaintiff's RFC.

The RFC is the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Social Security Ruling 96-8p[7] provides "[i]n assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments," meaning those the ALJ found to be severe and not severe. Social Security Regulation (SSR) 96-8p, 61 Fed.

---

[7] This Ruling is binding within the Social Security Administration. 20 C.F.R. § 402.35(b)(1) ("[SSA Rulings] are binding on all components of the Social Security Administration."); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) ("We require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals." (citations and internal quotations omitted)).

14

Reg. 34474, 34477 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) ("Consideration of all impairments. . . is required when assessing a claimant's RFC."). In forming the RFC, the ALJ should consider "all of the relevant medical and other evidence," including but not limited to, medical evidence and opinions, as well as "descriptions and observations of [a claimant's] limitations . . . including limitations that result from [a claimant's] symptoms, such as pain," as described by the claimant. 20 C.F.R. § 404.1545(a)(3).

The ALJ did not find that Plaintiff's overactive bladder was severe or that it required any limitations to her RFC. Substantial evidence supports the ALJ's finding.[8] As the ALJ correctly noted, Plaintiff's overactive bladder was transient or controlled. R. 15. In multiple visits to doctors after March 2021, after Plaintiff had learned that her social security benefits had been terminated and began appealing that decision, Plaintiff did not seek treatment for her overactive bladder. *See* R. 985–87, R. 994–96, R. 1000–02. Rather, she denied to her nephrologist and her primary care provider any increased

---

[8] Even if this were not true, remanding this case for a determination as to whether Plaintiff's overactive bladder was a severe impairment would be unnecessary. Even assuming the ALJ erred by finding the overactive bladder was not a severe impairment, the error was harmless. The ALJ found that Plaintiff suffered from a severe impairment other than overactive bladder—specifically, major depressive disorder—and then proceeded to the next steps of the sequential analysis. R. 15–16.

15

frequency urinating. R. 959 (April 2021), R. 985–87 (September 2021), R. 996 (February 2022), R. 1002 (June 2022). And, her bladder consistently appeared normal in imaging studies. *See, e.g.,* R. 634 (no liquid retention), 636 (normal cystoscopy), 669 (normal CT scan), 1031 (same).

Moreover, there is no indication that Plaintiff's overactive bladder significantly affected her ability to perform work activities. There is little indication—beyond Plaintiff's own reports—that Plaintiff suffered from an overactive bladder during the daytime. Rather, her physicians focused on her frequent urination (polyuria) *at night* (nocturia). R. 650 (Dr. Nagarajan noting, "Looks like she has polyuric nocturia"); *id.* ("She makes less [urine] during the waking hours[,] more during the sleeping hours"); R. 657 (primary care provider noting, "Patient endures worsening nocturia" in October 2020); R. 772 (Dr. McCullough listing diagnosis in early 2021 as nocturia, although also noting general overactive bladder). Moreover, to the extent Plaintiff complained about her frequent urination, her complaints were mostly limited to frequency of urination at night. *See, e.g.,* R. 46 (testifying about waking up to urinate); 650 (noting the patient's main problem is nocturia), 651 (noting referral for treatment of nocturia), 669 ("patient complains of frequent nocturia"). And, to the extent the record suggests her nighttime overactive bladder caused any other issues with her ability to work (for example, by disturbing her sleep and making her lethargic during the day (R. 48

16

(mentioning naps)), the most recent medical records confirm that, even by Plaintiff's own reports, her sleep was not significantly impacted by nighttime urination. *See, e.g.,* R. 1043 (reporting in January 2022 she wakes up to use the bathroom at night but is able to fall back asleep).

In other words, substantial evidence supports the ALJ's finding that Plaintiff's bladder impairment (1) was not severe, meaning that it did not significantly limit her ability to perform "basic work activities" (*see* 20 C.F.R. § 404.1509), and (2) did not require additional limitations in her RFC.

## V.  Conclusion

For the reasons stated, I ORDER:

(1) The decision of the Commissioner is affirmed.

(2) The Clerk of Court shall enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

ORDERED on July 12, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge